**Application of Arnold E. BLOOMQUIST et al.**

**Patent Appeal No. 9048.**

United States Court of Customs and Patent Appeals.

Dec. 20, 1973.

Bruce Tittel, Wood, Herron & Evans, Cincinnati, Ohio, attorney of record, for appellants; William Kammerer, Columbus, Ohio, Ashland Oil Inc., of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Fred E. McKelvey and Raymond F. Martin, Washington, D. C., of counsel.

---

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This is an appeal from the Board of Appeals' affirmance of the examiner's final rejection of appellants' claims 1–10, all of the claims in the application, serial No. 758,153, filed September 6, 1968. We affirm.

## INVENTION

The claims are in product-by-process form and are directed to hindered aliphatic polyisocyanates (polymers) derived by the thermolytic rearrangement of the pendent aminimide groups [1] of an addition polymerization product which has been obtained by the polymerization of a tertiary amine methacrylimide and or vinyl or vinylidene monomer. The reaction scheme of the product-by-process claims can be illustrated as follows:

$$y\left( CH_2 = \underset{\underset{O}{\overset{\|}{}}}{\overset{\overset{CH_3}{|}}{C}}-\overset{-+}{C}-NN\!\!<\right) + x(R^-) \rightarrow \left[ (-CH_2-\underset{\underset{CONN<}{\overset{-+}{|}}}{\overset{\overset{CH_3}{|}}{C}})_y (R^-)_x \right]_n \overset{\Delta}{\longrightarrow}$$

| Tertiary Amine Methacrylimide | Vinyl or Vinylidene | Vinyl polymerization product with pendent aminimide groups |

$$\left[ (-CH_2-\underset{\underset{NCO}{|}}{\overset{\overset{CH_3}{|}}{C}})_y (R^-)_x \right]_n + yN\!\!<$$

Hindered Aliphatic Polyisocyanates

Claim 1 reads as follows:

1. A hindered aliphatic polyiso-cyanate obtained by thermolyzing an addition polymerization product of a tertiary amine methacrylimide and a vinyl or vinylidene monomer copolymerizable therewith.

$$-\underset{\underset{O}{\overset{\|}{}}}{C} - \overset{\ominus}{N} - \overset{\oplus}{N} \!\!<$$

Claims 2–7 present preferred reactants and claims 8–10 present various polymer products derived from the claimed polyisocyanates.

## PRIOR ART

The Patent Office relied on U. S. Patents 2,326,287 and 2,334,476,[2] granted to Coffman. Since these references are substantially the same for purposes of this case, only one (the earlier) will be considered. Coffman discloses the copolymerization of isopropenyl isocyanate[3] and a vinyl or vinylidene monomer. The solicitor concedes that the process of Coffman is different from that of appellants' product-by-process claims, since it involves only one step (as opposed to

2. Issued August 10, 1943, and November 16, 1943, respectively.

3.

$$(CH_2 = \overset{\overset{CH_3}{|}}{CH}-NCO)$$

two) and no thermolyzing step. No final polymer structure is disclosed by Coffman, but the parties agree that the polymer of Coffman has the same basic structure as the claimed hindered aliphatic polyisocyanates.

It should be noted that the values of subscripts x and y in the above illustration of appellants' claims determine the monomer distribution profiles of the polymer chain. Thus, for a general polymer formula $\left[(A)_{\overline{y}}\!-\!(B)_{\overline{x}}\right]_{\overline{n}}$ , the following polymer chains with the various monomer distributions result: when y and x are both 2, $\left[(A-A)\!-\!(B-B)\right]_{\overline{n}}$ ; when y and x are both 1, $\left[(A)\!-\!(B)\right]_{\overline{n}}$ ; and when y is 1 and x is 2, $\left[(A)\!-\!(B-B)\right]_{\overline{n}}$ .

## AFFIDAVIT

Neither appellants nor Coffman specifically disclose the values of subscripts x and y. However, for the purpose of showing that the monomer distribution profiles of the claimed aliphatic polyisocyanates are different from those of Coffman, appellants filed a Rule 132 affidavit by Dr. Culbertson, one of the inventors. The affidavit "categorically states that the isocyanate containing copolymers disclosed and claimed in the above-entitled application will exhibit different monomer residues distribution profiles along the polymer chain in comparison with any corresponding copolymer derived by the copolymerization of isopropenyl isocyanate." It also states that different monomer distribution profiles will result in different polymer properties. For the purpose of "factually supporting" these statements, Dr. Culbertson in his affidavit explains:

> In addition copolymerization, the Alfrey-Price Q and e-values are used extensively to describe the copolymerization properties of vinyl or vinylidene type monomers. Since Q is a measure of the general reactivity of the monomer and e depends on the polar properties on the monomer, these

two parameters are regarded as being constant and unique for every given monomer, regardless of the copolymerization system. The Q and e- values are related to the monomer reactivity ratios  .  . .."

It should be noted that the Q and e-values are determined empirically. The monomer reactivity ratios which are calculated by certain equations are then used to classify the copolymerization product into five classifications, namely: random copolymers, alternating copolymers, block copolymers or a physical mixture of two homopolymers, a copolymer of mostly one monomer or essentially a homopolymer, and a highly regular alternating copolymer.

Using the Alfrey-Price formula, Dr. Culbertson then predicts the monomer distribution profiles of six copolymer products. In the first example, vinyl acetate (vinyl monomer) was employed with each of the following monomers, separately: TMA (trimethylamine methacrylimide—one of appellants' preferred tertiary amine methacrylimides), DHA (beta-hydroxypropyl dimethylamine methacrylimide—another of appellants' preferred tertiary amine methacrylimides), and IPI (isopropenyl isocyanate of Coffman). The results from the Alfrey-Price formula indicate that the DHA − VA copolymer is highly alternating (− DHA − VA − DHA − VA− DHA − VA etc.); that the TMA − VA and IPI − VA systems would result in a copolymer consisting mostly of TMA or IPI. The Alfrey-Price formula, however, indicates that the IPI − VA system would have shorter IPI blocks connected by VA residues than the TMA − VA system.

Another example employed n-butyl acrylate (BA), a different vinyl monomer from vinyl acetate. TMA, DHA, and IPI were again used. The results of all three systems indicated an alternating copolymer would result in each, but the following order of the three systems shows their tendency to form a highly regular, alternating copolymer: DHA−BA $\ggg$ IPI−BA $>$ TMA−BA.

## REJECTION

In rejecting the claims as anticipated by Coffman under 35 U.S.C. § 102, the examiner found the affidavit unpersuasive for a number of reasons; first, the affidavit describes only theoretical aspects of the monomer distribution profile; second, the affidavit sets forth mere conclusions rather than facts; third, the affidavit does not show any actual comparison of the claimed polymers with the polymers of Coffman; fourth, no explanation is made of how the specific copolymers employed in the affidavit are commensurate with the scope of the claimed polymers; and fifth, "No allegation is made that monomer distribution is in no way dependent on polymerization conditions . . . ."

The board was "in full agreement with the Examiner's position" and said that the claimed polymers are not restricted to the argued polymers. It also said:

> The conditions of polymerization, including temperature, pressure, catalyst and, most important, proportion of reactants, as well as the manner in which the reactants are added to each other, are not set forth, and entirely different products will be obtained, dependent upon such factors. Appellants recognize and even depend upon differences in speed of reactivity of various monomers. It is thus apparent that the broad scope of monomers included in claim 1 will produce different distributions of polymeric products when reacted with different proportions of the methacrylimide reactant.

## OPINION

The issue of anticipation centers around the values of subscripts y and x of the hindered aliphatic polyisocyanates of appellants' invention resulting from the particular process in the product-by-process claims in comparison with those values which may result from the process of Coffman. The Culbertson affidavit is crucial to this issue.

The board refers in its opinion to the "theoretical argument in the affidavit, unsupported by actual comparative data" and states that it is unpersuasive of merit in appellants' position. Appellants' response is that the Alfrey-Price formula used in the affidavit utilizes published and accepted data which were previously empirically determined by others skilled in the art and that the board's position is contrary to established rules of evidence and to decisions of this court.

The primary deficiency of the affidavit, which is discussed in the board's opinion, is the failure to consider the effect on resulting polymers of polymerization conditions of temperature, pressure, catalyst, monomer proportions,[4] and the method in which the monomers are added to each other. These do not appear to be covered by the Alfrey-Price formula, which employs reactivity ratios for the monomers.[5]

Different polymers (i. e. having different values of subscripts x and y discussed above under "INVENTION" and "PRIOR ART") will result from a different proportion of monomers, as evidenced by a different monomer distribution profile along the polymer chain. Accordingly, different proportions of the tertiary amine methacrylimide monomer of claim 1 will result in different polymers. So too, different proportions of monomers in Coffman will result in different polymers. Therefore, we agree with the board that the affidavit is unpersuasive in showing that the monomer distribution profiles of the claimed poly-

4. The affidavit appears to disclose some relationship between monomer proportions, reactivity ratios, and resulting polymer types, but how this relationship supports any difference over Coffman is not shown nor is any difference from this relationship obvious.

5. This is not to say that, as far as it goes, the Alfrey-Price formula is not of probative value. Theoretical results obtained by the application of valid scientific rules or formulae to proven facts, whether such results are labeled "facts," "opinions," or "conclusions," are entitled to as much weight as empirical results.

isocyanates are *always* different from those of the polyisocyanates of Coffman.

We also agree with the board that there is no explanation of how the polymers *in the affidavit* support any difference (i. e. in the values of subscripts x and y) over Coffman for the *claimed* polyisocyanates.[6] As noted by the examiner, there is no allegation, much less a showing, that the polymerization conditions (including the monomer proportions) do not affect the monomer distribution profile.[7]

Finally, as discussed above under "AFFIDAVIT" and as noted by the solicitor, the affidavit shows that use of different vinyl monomers will affect the resulting polymer product. Thus, the TMA – VA system produces a polymer with blocks of TMA and VA residues; whereas the TMA–BA system results in an alternating copolymer. The point is that different vinyl monomers result in different polyisocyanate structures, which hardly supports the "categorical" opinion in the Culbertson affidavit that use of a tertiary amine methacrylimide will *always* result in a different polymer from a combination of isopropenyl isocyanate with *any* vinyl monomer.

6. Support for the board's position on this point is found in appellants' failure to compare the closest prior art noted in Coffman. The particular vinyl monomer reacted with isopropenyl isocyanate in example 1 of Coffman is methyl methacrylate. However, the Culbertson affidavit employs only vinyl acetate and butyl acrylate. Thus, appellants have not shown that the polyisocyanates of example 1 of Coffman do not result in the same monomer distribution profiles as the claimed polyisocyanates.

7. In fact, appellants' own brief states:
In contrast to the prior art, the present invention permits the ready obtainment of a broad class of polyisocyanates. Such compounds may, *by varying reaction conditions,* be produced *with as few or as many isocyanate groups as desired.* (Emphasis supplied).
However, no explanation is given of how these variations in reaction conditions support a difference from the prior art. As noted above, the sole difference lies, if at all, in the monomer distribution profile—not in the structure of the individual units of

In view of the foregoing, we agree with the board that the Culbertson affidavit is insufficient to avoid anticipation of the claimed copolymers by Coffman for the purposes of 35 U.S.C. § 102 and affirm the board's decision.

Affirmed.

the polymer chain. Appellants' specification invites the examiner's and board's concern over the polymerization conditions by stating:

The *ratio* of the amine acrylimide to the comonomer or comonomers copolymerizable therewith *can vary extensively* depending in the main upon the particular use application envisioned for the final polyisocyanate product. In other words, polymers can be prepared in accordance with this invention containing a statistical distribution of *as few or as many pendant aminimide groups desired.* Likewise, the average polymer length of the copolymerization product is essentially a matter of choice. It is accordingly feasible to prepare as high a molecular weight polymer as desired consistent with the limiting factors in this regard known to exist in the art of addition polymerization. Similarly, the copolymerization reaction can be regulated or *comonomers appropriately selected* to produce low molecular weight polymers including dimers, trimers, etc. (Emphasis supplied).